McGOWAN et al. v. LARSEN.

(Circuit Court of Appeals, Ninth Circuit. February 25, 1895.)

No. 175.

1. NEGLIGENCE—MAINTAINING LIGHT ON FISH TRAP—EVIDENCE.
    In an action for the death by drowning of plaintiff's intestate, caused by defendants' failure to maintain a light on their fish traps, as required

by Pen. Code Wash. § 284, where defendants alleged that the light was extinguished by an unprecedented freshet, evidence that it was defendants' custom to put lights on their traps before the passage of the law requiring it, that defendants had ordered their men to take particular care of the lights, and that witness had once seen one of defendants' lights struck out by an oar, was inadmissible.

2. PLEADING INCONSISTENT DEFENSES—INSTRUCTIONS.
   Though defendant may have a right to plead two inconsistent defenses, and has introduced testimony to sustain each, a charge that both cannot be true, one must be false, is not erroneous.

3. INSTRUCTIONS—ACCUSATION OF PERJURY.
   The use of the word "false" in such instruction is equivalent to "untrue," and cannot be construed as an "accusation of perjury or willful false statement."

4. SAME—DUTY TO MAINTAIN LIGHT ON FISH TRAPS—DEGREE OF CARE.
   In an action for the death of plaintiff's intestate, caused by failure of defendants to maintain a light on their fish traps from sunset to sunrise, as required by Pen. Code Wash. § 284, a charge that it is not enough to put a light on the traps, but defendants must use reasonable care to keep it burning, and, if it should go out from causes which could not be guarded against, reasonable diligence must be used to restore it, leaving it to the jury to say what, under the circumstances, would constitute reasonable diligence, is not erroneous.

5. APPEAL—REVIEW.
   On appeal, appellant is confined to the exceptions taken at the trial, and cannot urge different exceptions in his brief.

In Error to the Circuit Court of the United States for the District of Oregon.

Action by one Larsen, administratrix of Peter W. Larsen, deceased, against one McGowan and others, for wrongfully causing the death of plaintiff's intestate. There was a judgment for plaintiff, and defendants bring error.

This action was originally brought in the circuit court of the state of Oregon for Clatsop county, under section 138 of the Code of Civil Procedure of Washington, which is as follows:

"Sec. 138 (8). The widow, or widow and her children, or child or children if no widow, of a man killed in a duel shall have a right of action against the person killing him, and against the seconds and all aiders and abetters. When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or when the death of a person is caused by an injury received in falling through any opening or defective place in any sidewalk, street, alley, square or wharf, his heirs or personal representatives may maintain an action for damages against the person whose duty it was, at the time of the injury, to have kept in repair such sidewalk or other place. In every action the jury may give such damages, pecuniary or exemplary, as under all circumstances of the case may to them seem just."

The case was transferred, on petition of plaintiffs in error (defendants in the action), to the circuit court of the United States for the district of Oregon. Defendant in error (plaintiff in the action in court below) sues as administratrix of the estate of Peter W. Larsen, deceased, and alleges that the plaintiffs in error jointly owned and operated a fish trap in Pacific county, state of Washington, and negligently and unlawfully omitted to show conspicuously, or at all, any bright white or other light upon said trap continuously between the sunset on the 14th and sunrise on the 15th of May, 1893; that the deceased, Peter W. Larsen, was between said times engaged in fishing for salmon with a boat and gill net in the vicinity of said trap, and by reason of the omission to show a light as aforesaid he was, about 2:30 o'clock, thrown against said trap and into the river, and drowned. The answer of the defendant denies these allegations, and affirms that they did conspicuously show

a light continuously for said time, and, further, affirms that at the commencement of the night they placed and strongly attached a bright white light upon said trap in an open, conspicuous position, where it could be seen, and that they took reasonable and proper precautions to insure its existence and burning during the night; that said light was prepared and secured as it had always been, and would withstand storms and gales, but that a freshet of tremendous magnitude, such as had not been known on the river within the memory of man, occurred, and filled the river with drift, which struck the trap with such force as to demolish the same and cause the removal of any light placed thereon. As a further defense the deceased is charged with contributory negligence in going upon the river and attempting to fish in its then condition. Plaintiff, replying, denied the new matter to the answer. The case was tried by a jury, who rendered a verdict for plaintiff in the sum of $3,000.

Section 284 of the Penal Code of Washington is as follows:

"Sec. 284. Any person or persons owning, operating or using any pound-net or trap shall cause to be painted in a conspicuous place on said pound-net or trap, while the same is in use, a number designated by the fish commissioners of this state, said number consisting of a black number or figure or figures not less than six inches in height painted on a white ground; and shall also conspicuously show at night time, between sunset and sunrise, a bright white light; and any person or persons violating the provisions of this section shall be deemed guilty of a misdemeanor, and shall be fined in any sum not exceeding two hundred and fifty dollars."

There are a number of assignments of error, including exceptions to exclusion of testimony and to instructions given by the court. The instructions excepted to are as follows: "(4) That the circuit court erred in its charge to the jury in announcing that the defendants have made two defenses, one of which is that they did have a light out, and the other that they did not have a light out, and in stating that both of these statements could not be true,— one must be false,—and in all that the court said upon that subject, the same being as follows, to wit: 'To this complaint the defendants make two answers. First, they say that they had no light out. Then, for a further and separate defense, they say they did have a light out; that they had a light, and kept it burning all night, at this place. Then, for a further and separate defense, they say they did not have a light out at this place, but that as a matter of fact they put one out in the fore part of the evening, and that, by reason of the unprecedented condition of things,—the high water and the large amount of drift,—this drift, striking the piling that was connected with the piles upon which this light was hung, caused the light to go out, and that this was through no fault or negligence of theirs. Of course, it is needless to say that both of these statements cannot be true. One of them is false, and it is for you to determine which is the true statement, and if either is true.' (5) That the said court erred in its instruction to the jury as to the necessity of keeping a light; said instruction being as follows, to wit: 'It is the duty of these defendants to keep lights upon these traps. It is made their duty by law. I do not mean to say by this that this is an absolute duty. It is their duty to put out a light there, but that is not enough. It is their duty to keep a light burning there from sundown to sunrise on each night. But I do not mean to say that this is an absolute duty; that is to say, that if this light should go out under circumstances which a reasonable prudence could not provide against, and if there should be a failure to restore the light for the same kind of reason, that would excuse the defendants. If they put out a light, and kept the necessary guard or watch to see that that light was kept burning, and in consequence of the unprecedented flood or drift under the light it had gone out, and they were unable to reach it, it having gone out without any fault of theirs, of course, under these circumstances, they would not be chargeable with negligence. Subject to these limitations, they would be. It is their duty. They have these traps in this river, and if they cannot, under all ordinary circumstances, keep these lights burning upon the traps, they can at least remove the traps. It is their duty, if they maintain these traps in the river, to keep lights upon them; not only to light the lanterns, and put them out, but to keep them there by the exercise of reasonable diligence.' (6) That the said court erred in its instruction to the jury

as to the degree of care exacted from the defendants; said instruction being as follows, to wit: 'As to what would be reasonable diligence under these circumstances, that is a fact I would submit to you. You will consider, of course, the nature of the injury that is liable to result, all the circumstances surrounding the existence of this trap, and the care and expense involved in maintaining the light,—consider the duty which they are under,—and then determine from all the facts and circumstances in the particular case whether the defendants are excusable in failing to restore the light, if there was any light there; and if the light went out, and if it was not restored, as I believe it is not claimed that it was, unless the first answer, which sets up that there was a light burning all night, would justify the inference that the light had gone out and been restored.' (7) That the said circuit court erred in its suggestion to the jury that the defendants removed the light shortly after daylight; said instruction being as follows, to wit: 'And so, in the light of these surroundings, you will determine which class of witnesses is correct as to whether there was a light there or not; which class of witnesses is more likely to be correct. There is one circumstance which, in my mind, has some significance. It is the fact that the captain of the La Camas testified that this light was burning there after three o'clock, when they left. This must be about daylight, as this was in the month of May,—one of the very longest days of the year. The testimony of the witness who put out the light there, whose testimony was taken before the coroner, is that the light was out when he took it down. It does not appear when he took the light away; what time does not appear. I think it was stated some time during the course of the trial by counsel, and tacitly agreed to, that it was some time after daylight,—probably soon after daylight. Now it strikes me as having some improbability about it that this light could have been burning when the captain of the La Camas saw it, some five minutes after three, and should have gone out by the time it was taken down by this man, whose business it was to take it down, although it might be that it went out during this time. It seems to me that it is not very probable under those circumstances. However, my judgment is not to govern; the matter is for your determination, not mine.' " The exclusion of evidence excepted to is as follows: (1) That it was the custom of defendants to put out lights on their traps before the passage of the law requiring it. (2) That H. C. McGowan had given orders to his men to take particular care of the lights. (3) That George Bell had seen "one of Mr. McGowan's lights struck out one night with an oar."

A. F. Sears, Jr., for plaintiffs in error.

Raleigh Stott, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

McKENNA, Circuit Judge, after making the above statement, delivered the following opinion:

The rulings of the court in excluding testimony were correct. No inference of sufficient degree of probability could be drawn from it under the issues to make it admissible.

To sustain their exception to the ruling of the court for giving the instruction contained in the fourth assignment of error and above quoted, plaintiffs in error contend that under the laws of Oregon they were entitled to plead inconsistent defenses, and, citing Pom. Rem. & Rem. Rights, § 722, that they could not be compelled to elect between such defenses, nor could evidence in favor of either have been excluded at the trial on account of inconsistency. "If this be true," counsel say, "it is obvious that the interests of the plaintiffs in error were seriously affected by the remarks of the court in criticism of these defenses. If they were entitled to their defenses, they were entitled to them without their being weighted down by

these strictures," meaning the comments of the instruction. But
this does not follow. The defenses they might be able to make (we
assume it without deciding it), and evidence in support of them
might be admissible; but after it is admitted it must receive con-
sideration, and its character either absolutely or in relation to other
evidence must be determined, that a judgment may be formed.
Inconsistent defenses—that is, when the truth of one negatives the
truth of the other—cannot both be found true; and in reaching a
judgment of the truth of either the court may assist the jury, if it
make no comment which the evidence will not bear, and assume no
function which it is the jury's right to exercise. The record does
not contain the evidence, and we must assume that the defenses
were made as stated by the court. It is manifest that only one
could be true. If there was no light out, one could not have burned
all night; and if one burned all night it could not have been ex-
tinguished before morning by a freshet. The comment of the
court, therefore, was correct, and it submitted to the jury the only
proposition the jury had a right to find, to wit, the truth of one of
the defenses.

Counsel urge in their brief that by the use of the word "false"
in the instruction the court "made a direct accusation of perjury;
of willful false statement,"—and that the jury must have received
the word in such sense, and not as an equivalent for "untrue." This
is inferred because in certain statutes imposing penalties or detri-
ments the word is so construed. The inference we do not think is
justified. Besides, the context refutes the contention of counsel.

We do not find any error in the instructions contained in the fifth
and sixth assignments of error. The statute requires any person
owning or operating a trap to "conspicuously show at night-time
between sunset and sunrise a bright white light." It must be dis-
played continuously. It must be put out at sunset and maintained
until sunrise. The excuses for the nonobservance of this duty, in
view of the facts and the degree of care required, were properly
explained.

To the instruction contained in the eighth assignment of error,
plaintiffs in error take in their brief a different exception to that
taken at the trial. They must be confined to the latter. The
record states the exception as follows:

"To which instruction of the court the defendants, by their said counsel,
duly excepted as to the court's suggestion that the defendants removed the
light next morning, probably soon after daylight; which exception the court
allowed, the court saying: 'I said he removed it the next morning. It does
not appear when he removed it the next morning, but probably soon after
daylight.' "

That is, the exception was to two suggestions of fact: (1) The
defendants removed the light next morning; (2) that this was done
"probably soon after daylight,"—and the improbability which the
court mentioned was that between 5 minutes after 3 and "soon
after daylight" the light "should have gone out," hence it must
have gone out before 5 minutes after 3, and that the captain of the
La Comas was untruthful or mistaken as to the fact or time. This

reasoning counsel for plaintiffs in error does not seem to think is very strong, but it is only necessary to say that it was submitted to the jury for what it was worth; the learned judge saying: "However, my judgment is not to govern; the matter is for your determination, not mine." We think the limits allowed to the court were not transcended, more particularly when considered in connection with the rest of the instructions given. There being no error in the record, the judgment is affirmed.